UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeffrey C.,<br><br>        Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br>Acting Commissioner of Social Security,<br>        Defendant. | Case No. 17-cv-5366 (ECT/HB)<br><br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jeffrey C. seeks review of the Acting Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits ("DIB"). See (Compl.) [Doc. No. 1 at 1]. The parties filed cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. [Doc. No. 10]; (Def.'s Mot. for Summ. J. [Doc. No. 17].)  For the reasons set forth below, the Court recommends that Plaintiff's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff protectively filed for DIB on October 7, 2014. (Admin. R. [Doc. No. 8 at 145–46].)  Plaintiff claimed an alleged onset date ("AOD") of April 18, 2014, claiming disability as a result of PTSD, arthritis, diabetes, cholesterol, and high blood pressure.

(*Id.* at 62, 145–46, 191–98). Plaintiff's claim was denied initially and upon reconsideration. (*Id.* at 18, 80–84, 90–93.) Following a hearing, an administrative law judge (the "ALJ") denied benefits to Plaintiff. (*Id.* at 30). On November 6, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1). The decision by the Appeals Council to deny review rendered the ALJ's decision final. *See* 20 C.F.R. § 404.984; *Sims v. Apfel*, 530 U.S. 103, 107 (2000). This lawsuit was initiated on December 6, 2017. (Compl.).

**B. The ALJ's Decision**

On December 8, 2016, the ALJ issued a decision concluding that Plaintiff was not disabled after conducting a five-step analysis prescribed by 20 C.F.R. § 404.1520(a)–(g). (*Id.* at 15–30.)

At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity as of his AOD. (*Id.* at 20.) At step two, the ALJ considered the following to be serve impairments under the regulations: "anxiety disorder NOS, adjustment disorder with depressed mood, obesity, and degenerative changes of the lumbar spine." (*Id.* at 20–21.) At step three, the ALJ considered Listing 1.02, 12.04, and 12.06 and determined that none of Plaintiff's impairments meet or are medically equivalent to one of the Listings. *See* (*id.* at 21–24.)

At step four, the ALJ concluded that Plaintiff has the RFC "to perform medium work as defined in 20 CFR 404.1567(c)," and provided for certain other mental and social restrictions, but no other physical accommodations. *See* (*id.* at 24.) The ALJ stated that "the minimal course of treatment for his back impairment . . . minimal

objective findings, observations by providers, imaging of his back, medications and overall functioning support the residual functional capacity and do not support the alleged disabling symptoms and limitations." (*Id.* at 25.)  In support, the ALJ referenced activities of daily living, relatively normal physical examinations, a general lack of treatments directed to his physical impairments, an absence of opinion by his medical providers that the Plaintiff was unable to work or that his physical impairments warranted any work-related accommodations, the Plaintiff's own statements that his physical impairments were not the reason he is unable to work, and general lack of significant findings in any of Plaintiff's diagnostic imaging as justifications for discounting Plaintiff's subjective complaints.  *See* (*id.* at 25–28.)  That is, the ALJ

> [gave] little weight to the claimant[']s assertions . . . that the claimant is disabled at the sedentary or light exertional levels, due to the inconsistency with the objective medical evidence that shows normal physical exams, normal gait, negative straight leg raises, full muscle strength, inconsistent complaints of physical pain, and no sign of significant findings on any diagnostic imaging.

(*Id.* at 28.)

At step five, considering Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff could work in jobs that exist in significant numbers in the national economy, including: hand packager, machine packager, and machine feeder.  (*Id.* at 29–30.)  Thus, the ALJ held that Plaintiff was not disabled. (*Id.* at 30.)

Plaintiff asserts errors related to the ALJ's RFC determination that Plaintiff is capable of performing "medium" work.  *See* (Pl.'s Mem. of Law in Supp of Mot. for Summ. J., "Pl.'s Mem. in Supp." [Doc. No. 11]).  Specifically, Plaintiff asserts that the

3

ALJ ignored Plaintiff's "worsening spondylolisthesis" and his subjective complaints of back pain when determining his RFC. *See* (*id.* at 10–12.)

## C. Factual Background[1]

### 1. Plaintiff's Background and Testimony

As of his AOD, Plaintiff was sixty-one years old, thus approaching retirement age. *See* 20 C.F.R. § 404.1563(e); *see also* (Admin. R. at 62.) Plaintiff has a high school education, completed three years of college, and worked for nearly thirty years as a registered nurse. (Admin. R. at 29, 165, 175, 238, 397.) In support of his claim for disability, he stated that his low back, hip, and neck pain, are "all arthritic complaints [that are] fairly consistent with somebody of his age." (*Id.* at 235.)

At the hearing before the ALJ, Plaintiff testified that he had stopped working as a registered nurse because "it was getting very stressful for [him] to work[,] . . . [he] was reacting not as [he] should, . . . and it was just difficult for [him] to continue working in that environment." (*Id.* at 39.) Plaintiff also described stress at home as a contributing factor to why he "couldn't continue" at work. (*Id.*) When asked more about the medical problems preventing him from working, he stated that he was "stressed out" and was "having trouble concentrating . . . . [He] was having trouble relating to—just doing [his] job in general and relating to the people [he] worked with . . . ." (*Id.* at 40.) Plaintiff stated that these issues involved "mostly coworkers" and that he "didn't have a lot of

---

[1] The Court has reviewed the entire administrative record but summarizes only the evidence necessary to provide context for the issues before the Court.

problems with patients." (*Id.*) Plaintiff stated that after he left his job, he was "a lot less stressed out." (*Id.* at 41.)

Plaintiff also testified as to his activities of daily living, including taking his dog for walks totaling approximately two-and-a-half miles each day. (*Id.* at 42–43.) Plaintiff stated that he would need to take breaks during these walks. (*Id.* at 43.) When asked about lifting restrictions, Plaintiff stated that his hiatal hernia did not cause difficulty with lifting but could cause acid reflux. (*Id.* at 44.) In addition, Plaintiff testified that the heaviest thing he was comfortable lifting was his dog, which weighed six pounds. (*Id.* at 45.) When asked whether he could lift fifty pounds, Plaintiff stated, "[n]o. Absolutely not." (*Id.*) Finally, when asked why his medical records consisted mostly of annual physicals, he stated that he did not feel the need to see doctors more often. *See* (*id.* at 49–50.) Specifically, Plaintiff testified that his "diabetes . . . is pretty well under control. My blood pressure is under control. I just . . . [think] there's no reason for me to go see a doctor." (*Id.* at 50.) Plaintiff also stated that as a registered nurse he felt like he could take care of himself. (*Id.*)

### 2. Relevant Medical Evidence

As the foregoing suggests, there are few medical records relating to the alleged back impairments that are the basis for Plaintiff's challenge to the ALJ's adverse disability determination. The record shows that between 2007 and 2012, Plaintiff was seen only a handful of times for complaints related to his lumbar spine. *See, e.g.*, (*id.* at 240–41, 243–44, 449–51.) Imaging was conducted in 2008, finding "degenerative spondylolisthesis" but no nerve root compression. (*Id.* at 244, 451). Physicians

prescribed conservative treatments for Plaintiff's lumbar condition ranging from weight loss to strengthening and physical therapy.  *See, e.g.*, (*id.* at 240–41, 451.)  It is not clear from the record whether Plaintiff ever attended physical therapy, although one medical provider noted Plaintiff's lack of physical therapy in one of his treatment notes.  *See* (*id.* at 449.)  Physicians noted that Plaintiff "denies any weakness," walked with appropriate gait, demonstrated normal strength in his extremities, and did not evidence appreciable pain behavior.  *See, e.g.*, (*id.* at 240, 451.)  There are no records indicating that Plaintiff ever told his physicians that his back impairment made it difficult for him to work.[2]

Finally, Plaintiff did not identify, and the Court did not find, any medical records that specifically address Plaintiff's back-related complaints at any time after the AOD.

## II.   DISCUSSION

As noted, Plaintiff contends the ALJ erred in determining at step four that Plaintiff is capable of performing "medium" work because she improperly failed to take into account Plaintiff's "worsening spondylolisthesis" and his subjective complaints of back pain:

> The Administrative Law Judge basically determined Mr. Ciebiera's worsening spondylolisthesis still allowed him to be on his feet all day long in a rather heavy work capacity of lifting 50 pounds or more on a fairly regular basis. All the while, Mr. Ciebiera is over the age of 61 at all times. This is a rather extraordinary conclusion of the Administrative Law Judge and flies in the face of reality and common sense.

(Pl.'s Mem. in Supp. at 11.)

---

[2] On the contrary, the records indicate that Plaintiff told his providers he was seeking disability on the basis of his PTSD diagnosis.  *See, e.g.*, (*id.* at 455.)

6

The Court addresses only this argument. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (stating the claimant waived issues not raised before the district court).

### A. Legal Standard

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'" *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (quoting *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)). The Court's task is not to reweigh the evidence. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). Instead, the Court must "review the record for legal error and . . . ensure that the factual findings are supported by substantial evidence." *Hensley*, 352 F.3d at 355.

The "substantial evidence on the record as a whole" standard does not require a preponderance of the evidence, but rather only "enough so that a reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). This Court must "consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Sales v. Apfel*, 188 F.3d 982, 984 (8th Cir. 1999) (alteration in original) (internal quotation marks omitted).

### B. Analysis

"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In this context, Plaintiff must provide "*medical evidence* that addresses the claimant's ability to function

in the workplace" so that an ALJ may compare it with "all the evidence in the record" to determine an RFC. *Id.* at 807 (emphasis added). The ALJ is only required to include limitations in an RFC that are supported by substantial evidence in the record as whole. *Cf. Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006). But Plaintiff's argument that the ALJ ignored his "worsening spondylolisthesis" is premised only on his subjective complaints; he points to no medical record describing a test result, diagnosis, or evaluation by a treating physician that supports his claim that his spondylolisthesis was worsening. *See generally* (Pl.'s Mem. in Supp.). On the contrary, as the Commissioner notes, "he received no treatment for his alleged back impairment after the alleged onset date." (Def.'s Mem. in Supp. at 9.)

Thus, the Court must consider whether the ALJ erred in the manner in which she discounted Plaintiff's subjective complaints. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). After a careful review of the record, the Court concludes the ALJ did not err in evaluating Plaintiff's RFC. The ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence in the record as a whole.

First, during the hearing, Plaintiff stated that he stopped working because of his anxiety and other mental impairments; the physical impairments Plaintiff asserts the ALJ should have considered in her RFC determination were not identified by him as a reason he could no longer work. *See* (Admin. R. at 41.) This is further supported by the record evidence. *See, e.g.* (*id.* at 191, 235–36; *id.* at 455 (treatment records from a physician who physically examined Plaintiff and noted Plaintiff "is seeking disability because of a diagnosis of PTSD").) The ALJ was justified in discounting Plaintiff's subjective

8

complaints regarding his physical impairments on this basis. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (finding it relevant that the claimant left her job for reasons unrelated to her alleged medical impairments).

Second, as the ALJ observed, no examining doctors opined that Plaintiff could not work or that Plaintiff should have work-based restrictions based on his physical condition, nor did objective test results support such a conclusion. *See, e.g.*, (Admin. R. at 240–41, 244, 449–51.) Specifically, one treating physician noted that Plaintiff had "a long history of low back pain" but that "[h]e continues to work without restrictions." (*Id.* at 449.) Indeed, the only mention of workplace restrictions occurred in relation to a consultative examination regarding Plaintiff's PTSD and anxiety disorders. *See* (*id.* at 397–401.) The ALJ was justified in discounting Plaintiff's subjective complaints on this basis. *See Polaski*, 739 F.2d at 1322 ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.")

Third, Plaintiff's argument that as a registered nurse he had "specialized advanced medical knowledge not only regarding medical conditions but also the proper treatment and care for medical conditions" that would require the ALJ to accept Plaintiff's subjective self-assessment as a substitute for records from treating physicians, *see* (Pl.'s Mem. in Supp. at 10), is unavailing for several reasons. For one thing, Plaintiff's argument that he could manage his own care and therefore had no need to see a physician is inconsistent with the fact that he regularly sought follow-up care for other conditions that were also associated with his disability claim, including his diabetes and

9

gastroesophageal reflux disease. *See, e.g.*, (Admin. R. at 404–11, 419–28.) Moreover, Plaintiff is a registered nurse, not a licensed physician. Under the regulations, therefore, Plaintiff would not be considered an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a). And even if Plaintiff could be considered an acceptable medical source, the ALJ may discredit the opinions of a medical source if they are not supported by objective evidence. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064–65 (8th Cir.2012) (concluding that not affording a treating physician's opinion substantial weight is appropriate where the "opinion was largely based on [claimant's] subjective complaints.") Thus, the lack of objective medical evidence with respect to Plaintiff's subjective complaints remains an important factor regardless of Plaintiff's medical knowledge and experience. *Cf. id.* In *Moore v. Astrue*, 572 F.3d 520 (8th Cir. 2009), the claimant was a licensed practical nurse who challenged the ALJ's RFC determination premised largely on the ALJ's alleged failure to give "Moore's description of her own limitations" sufficient weight. 572 F.3d at 523. The Eighth Circuit concluded that "[i]n light of the ALJ's findings, it is apparent he sufficiently considered Moore's testimony regarding her disabling pain, but discredited it for good cause because her testimony was inconsistent with the record as a whole." *Id.* at 525.

Furthermore, even assuming Plaintiff's training and experience as a registered nurse uniquely equipped him to evaluate and care for his condition, the record nevertheless shows that he chose to treat his back pain with nonprescription drugs and conservative modalities of treatment. *See, e.g.*, (Admin. R. at 65, 204, 232, 240, 449.) This too provides a proper basis for the ALJ to discredit Plaintiff's subjective complaints.

*See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) ("We find substantial evidence on the whole record to support the ALJ's decision to discredit Haynes' subjective complaints of pain. Haynes takes no prescription pain medication and his impairments . . . are controlled by mild medication and conservative treatment.")  Furthermore, John M. Redmond, MD, referred Plaintiff to physical therapy, (Admin. R. at 241), but nothing in the record suggests that Plaintiff attended these appointments.  *See, e.g.*, (*id.* at 449 (follow-up report from Daniel Wallerstein, DO, where Dr. Wallerstein noted approximately two months after Dr. Redmond's prescribed physical therapy that Plaintiff had no documented physical therapy visits).)  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."  *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Finally, when Plaintiff did seek medical care, his back pain was not generally a topic of conversation.  *See, e.g.* (Admin. R. at 384, 386, 404, 414–15, 417, 419–20, 423, 434, 436, 455).  *But see* (*id.* at 240–41, 449–51.)  "A lack of complaints to a treating physician detracts from a claimant's allegations of a disabling impairment."  *Reece v. Colvin*, 834 F.3d 904, 909.  Indeed, not a single medical record shows that Plaintiff's back pain was specifically discussed with, let alone treated by, any medical provider after the AOD.

At bottom, the Court finds the ALJ was justified in discounting Plaintiff's subjective complaints of back pain and his self-assessment of "worsening spondylolisthesis" and in concluding that no additional RFC restrictions were appropriate on that basis.  Plaintiff assigns no other specific error in connection with the ALJ's RFC

11

determination at step four that he was capable of medium work.  To the extent Plaintiff intended to challenge the RFC determination as erroneous for other reasons, Plaintiff offers no specific arguments and identifies nothing in the record to substantiate his conclusory assertion that the ALJ's decision "flies in the face of reality and common sense."  *See* (Pl.'s Mem. in Supp. at 11.)

Accordingly, after careful review of the record, the Court is satisfied that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. That is, on the basis of all of the evidence of record, including Plaintiff's own testimony, "a reasonable mind could" conclude that the ALJ's RFC determination is correct and that Plaintiff is not as impaired as he alleges. *Cf. Edwards*, 314 F.3d at 966.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Jeffrey C.'s Motion for Summary Judgment [Doc. No. 10] be **DENIED**; and

2. The Acting Commissioner of Social Security's Motion for Summary Judgment [Doc. No. 17] be **GRANTED**

Dated: December 21, 2018

                                               *s/ Hildy Bowbeer*
                                               HILDY BOWBEER
                                               United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).